IN THE FEDERAL DISTRICT COURT FOR THE WESTERN
DISTRICT OF PENNSYLVANIA

ADAM HOWELL,
    an individual

               Plaintiff

JURY TRIAL DEMANDED

    v.

PENN TOWNSHIP, PENNSYLVANIA, a political
subdivision; CHIEF MICHAEL MASTROIANNA,
an individual; OFFICER LEWIS J. LOCK, an individual;
PENN TRAFFORD SCHOOL DISTRICT, KATHY
KELLY-GARRIS, an individual, and SCOTT
INGLESE, an individual.

               Defendants.

## COMPLAINT

COMES NOW the Plaintiff, ADAM HOWELL, by and through his counsel, Susan N. Williams, Esq. and files the within Complaint, in support thereof alleging as follows:

### I.    INTRODUCTORY STATEMENT

1. This is an Action for damages sustained by a citizen of the United States against Penn Township, Pennsylvania; Michael Mastroianna, the Chief of Police of the Penn Township Police Department; Lewis J. Lock, an officer of the Penn Township Police Department, arising out of an incident which occurred on September 19, 2007, at the Penn-Trafford High School, Harrison City, Westmoreland County, Pennsylvania. Mr. Howell also brings an Action for damages against the Chief of Police, as the supervisory officer responsible for the conduct, training and supervision of police officers under his charge, for his failure to properly train police officers in the appropriate methods of

dealing with the public and the use of force. Mr. Howell also brings this action against the Township of Penn, Pennsylvania, as the ultimate policy maker for the Penn Township Police Department.

Mr. Howell brings this action against the Penn Trafford School District, Kathy Kelly-Garris and Scott Ingles, both principals of the High School for exposing Mr. Howell to a danger he would no otherwise have encountered, a "state-created danger."

## II. JURISDICTION

2. This action is brought pursuant to 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and the laws of the Commonwealth of Pennsylvania.

3. The jurisdiction of this Court is predicated on 28 U.S.C. §§ 1331 and 1342(a)(3) and the supplemental jurisdiction of this Court under 28 U.S.C. 1367(a).

4. Venue is placed with the United States District Court for the Western District of Pennsylvania because all of the Parties reside there, and all of the events complained of occurred within the Western District.

5. All conditions precedent to the maintenance of the Action have been satisfied or have occurred prior to its institution, including those set forth in 42 Pa.C.S.A. § 5522.

## III. PARTIES

6. The Plaintiff is Adam Howell, an adult individual, whose address is 41 Marilou Drive, Jeannette, Westmoreland County PA 15644.

7. The Defendant, Penn Township, is a political subdivision of the Commonwealth of Pennsylvania, with a business office of 2001 Commercial Court, Irwin, Westmoreland County PA, 15642.

8. At all times material hereto, and in all actions described herein, Defendant Lock was acting under color of law as a police officer and in such capacity as the agent, servant and employee of the Defendant, Penn Township.

9. At all material hereto, the Defendant John Mastroianna was the duly appointed Chief of Police of the Police Department of Penn Township. As such, he was the commanding officer of the Defendant Lock and was responsible for their training, supervision and conduct. He as also responsible for enforcing the regulations of his command obeyed the laws of the Commonwealth of Pennsylvania and the United States of America. At all times material hereto, Defendant Mastroianna was acting in such capacity as the official head of the Penn Township Police Department for the Defendant Penn Township.

10. At all times material hereto, the Defendant Penn Trafford School District (hereinafter "School District") was a public school district, organized under the laws of the Commonwealth of Pennsylvania, with a business address of PO Box 530, Harrison City, and Westmoreland County PA 15636-0530.

11. At all times material hereto, the Defendant Kathy Kelly-Garris was an agent or employee of the Defendant School District

12. At all times material hereto, the Defendant Scott Inglese was an agent or employee of the Defendant School District.

### IV. FACTUAL BACKGROUND

13. At all times material hereto, Adam Howell was a student at Penn Trafford High School.

14. Early in the school day of September 19, 2007, Adam had handed the keys to his car to his then girlfriend to hold for him until the end of the school day.

15. At approximately 1:15 p.m., Adam's then girlfriend, also a student at Penn Trafford High School was taken to the office of Assistant Principal Kelly.

16. The girlfriend had threatened to commit suicide.

17. The Defendant School District, its agents and employees, were aware that the girlfriend had preexisting mental health issues.

18. A call was made by Ms. Kelly to the girlfriend's mother to advise her of the suicide threat.

19. The mother did not answer her cell phone, so Ms. Kelly left a message to the effect that there was a serious situation concerning her daughter, and she should call immediately.

20. Scott Inglese, Principal of Penn Trafford High School, was advised of the situation by Ms. Kelly.

21. Mr. Inglese telephoned the school psychologist, Dr. Hahn, to seek his recommendation.

22. Dr. Hahn recommended that the girlfriend be taken by ambulance the Emergency Room, to be evaluated.

23. When mother of the girlfriend returned Ms. Kelly's telephone call, Ms. Kelly advised that an ambulance was being called to take her daughter to the hospital.

24. Mother refused to permit her daughter to be taken to the hospital, and indicated that she would come to the school and take her daughter to her family physician.

25. After school, at approximately 2:45, Adam went to his truck to wait for his girlfriend, and then travel to his after school job.

26. His truck was parked in such a way as to block other students' vehicles.

27. When she did not arrive at his car, he telephoned her cell phone.

28. Ms. Kelly answered the girlfriend's cell phone when it rang.

29. Ms. Kelly advised Adam that if he wanted his car keys, he would have to return to the school office, because the girlfriend had to remain at school. She said to Adam, "You need to get your keys and come calm her down."

30. Ms. Kelly did not tell Adam at that time why his girlfriend had to remain at school.

31. When Adam returned to the school office, the exterior center door was unlocked.

32. Ms. Kelly asked for Adam's assistance in calming down the girlfriend, who was "out of control" and insistent that she be permitted to leave.

33. Adam was placed in a room with the girlfriend, but not told why she was not permitted to leave, or told of the suicide threat.

34. Adam's girlfriend refused to give him the keys to his car, and repeatedly demanded that he take her with him out of the school.

35. When Adam saw how upset the girlfriend was, he asked to be allowed to take her home.

36. The girlfriend continued to insist that she be permitted to leave, and that Adam be allowed to take her.

37. Ms. Kelly advised Adam that he could leave, but that the girlfriend must remain.

38. Girlfriend became combative when she was advised that she could not leave with Adam.

39. Mr. Inglese then telephoned the police, out of hearing distance of Adam, and indicated that he needed an officer to deal with a suicidal student.

40. At no time did Adam have a weapon.

41. According to Defendant Lock, he had no idea of the nature of the situation he was being called to.

42. Girlfriend and Adam then attempted to exit the school office, with Adam in the lead.

43. As Adam and girlfriend left the office, in a hall approximately four feet wide, girlfriend was confronted by Defendant Lock.

44. Girlfriend continued to be combative.

45. Defendant Lock grabbed girlfriend and pushed her into the wall, face first.

46. He then pushed girlfriend to the floor in an attempt to handcuff her, and caused a cut on her lip.

47. Adam told Defendant Lock to let girlfriend get up.

48. When Defendant Lock did not get off of girlfriend, Adam grabbed Defendant Lock by the back of the shirt.

49. He attempted to pull Defendant Lock off of his girlfriend, who at that time was lying underneath Defendant Lock.

50. Defendant Lock then tased Adam in the chest.

51. Prior to his tasing Adam, Defendant Lock gave Adam no warning that he intended to do so.

52. Adam fell immediately to the ground, immobilized.

53. While Adam was lying on the ground, recovering from the first tasing, Defendant Lock tased him again.

54. Defendant Lock again gave Adam no warning that he intended to tase him.

55. As a consequence of being tased a second time, Adam lost control of his bodily functions.

56. As a direct and proximate consequence of the actions of the Defendants, as more fully set forth above, Adam has sustained the following damages:

    a. Physical injury causing pain and suffering;

    b. Emotional distress requiring ongoing medical and psychiatric treatment; and,

    c. He has been and will be required to expend money on medical treatment into the future.

### V. ADAM HOWELL v. TOWNSHIP OF PENN – 42 U.S.C. § 1983

57. The averments of Paragraphs 1 through 56 are incorporated herein by reference, as if more fully set forth herein.

58. This cause of action is brought by Plaintiff Adam Howell against Defendant Penn Township for deprivation by its agents, servants or employees of constitutional rights within the meaning of 42 U.S.C. §1983.

59. Defendant Township of Penn violated Adam Howell's Fourteenth Amendment substantive due process rights by failing to properly train and supervise the Defendant police officer with regard to appropriate interaction with the public without causing the deprivation of constitutional rights.

60. The aforementioned actions were not isolated incidents and the Defendant Township of Penn has a history of police officers using excessive force inappropriately and in situations which do not require the use of force, and in failing to provide reasonable medical treatment.

61. Prior to the date of this incident, the Defendant Township of Penn permitted and tolerated the continued constitutional violations by use of excessive and inappropriate force against individuals by police officers who were not prepared, trained or supervised, and tolerated the practice of permitting police officers to waive medical treatment without obtaining an individual's consent.

62. This continued lack of training, supervision and oversight caused the injuries suffered by Plaintiff Adam Howell.

63. The above described actions of the Defendant and the policies of the Defendant Penn Township violated Plaintiff's constitutional right by resulting in an excessive use of force, culminating in his serious personal injury.

64. As a direct and proximate consequence of the above mentioned unconstitutional acts of the Defendant Lock while he was an agent, servant, or employee of the Defendant Township of Penn, Plaintiff sustained the injuries above pled.

## VI. ADAM HOWELL v. MICHAEL MASTROIANNI, INDIVIDUALLY, VIOLATION OF CIVIL RIGHTS WHILE ACTING UNDER COLOR OF STATE LAW

65. The averments of Paragraphs 1 through 56 are incorporated by reference, as if more fully set forth herein.

66. At all time material hereto, Defendant Michael Mastroianna was the Chief of Police of the Penn Township Police Department.

67. At all times material hereto, Defendant Mastroianna, in his capacity as Chief of Police for the Penn Township Police Department, was responsible for the implementation and promulgation of policies for the Police Department

68. At all times material hereto, Defendant Mastroianna was responsible for the promulgation of policies and the implementation of training to maintain an effective police force that is capable and prepared to deal with the public in an appropriate manner.

69. The injuries and damages sustained by the Plaintiff, as pled forth above, are the direct and proximate result of the Defendant Mastroianna's failure to properly train, supervise and monitor the Defendant Lock.

70. The injuries and damages sustained by the Plaintiff, as pled above, are the direct and proximate result of the Defendant Mastroianna's failure to properly train, supervise and monitor the Defendant Lock, as well as his failure to promulgate appropriate policies concerning the use of force and failing to train his police officers, including the Defendant police officer, in the appropriate use of force, and as to situations where the use of force is appropriate.

71. The injuries and damages sustained by the Plaintiff, as set forth above, are the direct and proximate result of the Defendant Mastroianna's failure to properly train, supervise and monitor the Defendant Lock, as well as his failure to promulgate appropriate policies concerning the duty to provide reasonable medical treatment, and his failure to train his police officers, including the Defendant police officer, in the duty to provide reasonable medical treatment.

### VII.    ADAM HOWELL v.  LEWIS J. LOCK
### VIOLATION OF CIVIL RIGHTS WHILE ACTING UNDER COLOR OF STATE LAW 42 U.S.C. § 1983

72. The averments of Paragraphs 1 through 56 are incorporated by reference, as if more fully set forth herein.

73. This cause of action is brought by Plaintiff against Defendant Lock for his willful, wanton and malicious use of excessive force under the color of law that deprived Plaintiff of constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

74. Defendant Lock violated 42 U.S.C. § 1983 by discharging a taser, repeatedly, into the person of the Plaintiff in manner that was disproportionate to the force necessary to engage the Plaintiff in conversation, and in a situation where the Plaintiff was not yet placed under arrest, and where there was no reason for the Plaintiff to be placed under arrest.

75. As a direct and proximate consequence of the unconstitutional acts of the Defendant Plaintiff sustained the injuries above pled.

76. Defendant Lock, while acting in his capacity as a police officer and under color of law, willfully, intentionally and maliciously used force to subdue Plaintiff in a situation where the use of force was unwarranted and where Plaintiff had done nothing against the law, posed no threat of injury or bodily harm to Defendants, or anyone else at the time that force was used against the Plaintiff.

77. The intentional, willful, and wanton acts of the Defendant establish a claim for punitive damages.

### VIII. ADAM HOWELL v. TOWNSHIP OF PENN

78. The averments of Paragraphs 1 through 56 are incorporated by reference, as if more fully set forth herein.

79. Defendant Penn Township, through its employee John Lock, intentionally caused bodily harm to Plaintiff by causing him to be shot, repeatedly, with tasers.

80. The actions of Defendant aroused fear in the person of Plaintiff.

81. The aforementioned assault and battery was accomplished without the consent and against the will of Plaintiff.

82. Plaintiff has complied with the notice provisions of the Pennsylvania statutes, a condition precedent to the filing of a tort claim against Defendant Penn Township, as the Defendant Penn Township had actual knowledge of all of the incidents giving rise to Plaintiff's claims.

83. Defendant Penn Township is vicariously liable for the tortious acts of its employee that were committed within the scope and furtherance of their employment.

84. As a direct and proximate consequence of the acts of the Defendant Penn Township, through its employee, the Defendant police office, Plaintiff sustained the injuries above pled.

WHEREFORE, Plaintiff Adam Howell respectfully requests this Honorable Court to award:

a. compensatory damages;

b. punitive damages sufficient to punish the Defendant John Lock

c... reasonable costs and attorney's fees as provided for by statute;

d. damages for the pain, suffering, embarrassment, emotional distress and inconvenience caused to the Plaintiff; and,

e. such other relief as the court deems appropriate.

## XI. – ADAM HOWELL v. DEFENDANTS SCHOOL DISTRICT, KATHY KELLY-GARRIS, AND SCOTT INGLES

## VIOLATION OF 42 U.S.C. § 1983

85. The averments of Paragraphs 1 through 56 are incorporated by reference, as if more fully set forth herein.

86. At all times material hereto, Adam possessed a liberty interest in his bodily integrity, which was and is, protected by the Fourteenth Amendment to the Constitution of the United States.

87. At all times material hereto, the Defendants knew, or should have known, that permitting Adam to interact with girlfriend, rather than just retrieving car keys from girlfriend and handing them to Adam, would escalate an already volatile situation.

88. At all times material hereto, the Defendants, with willful disregard, reckless indifference, or deliberate indifference to Adam's safety, created a dangerous environment by permitting Adam to interact with girlfriend, rather than just retrieving car keys from girlfriend and handing them to Adam.

89. At all times material hereto, there existed a particular danger to Adam as a result of Defendants' actions in permitting Adam to interact with girlfriend, especially when Defendants' had knowledge of girlfriend's pre-existing mental health issues.

90. At all times material hereto, Defendants used the color of their authority to permit Adam to interact with girlfriend, rather than just retrieving car keys from girlfriend and handing them to Adam.

91. At all times material hereto, the Defendants knew, or should have known, that summoning police with no more information than "a suicidal student" would not provide police with information sufficient to assess and appropriately respond to the situation.

92. At all times material hereto, the Defendants, with willful disregard, reckless

indifference, or deliberate indifference to Adam's safety, created a dangerous environment by summoning police with no more information than "a suicidal student," thereby depriving police of information sufficient to assess and appropriately respond to the situation.

93. At all times material hereto, there existed a particular danger to Adam as a result of Defendants' actions in summoning police with no more information than "a suicidal student," thereby depriving police of information sufficient to assess and appropriately respond to the situation.

94. At all times material hereto, Defendants used the color of their authority to summon police with no more information than "a suicidal student," thereby depriving police of information sufficient to assess and appropriately respond to the situation.

95. As a direct and proximate consequence of Defendants' actions, Adam suffered injuries more fully described above.

96. The action of the Defendants', acting under color of state law, as more fully Described above, deprived Adam of his liberty interest in his bodily integrity, in violation of 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Adam Howell respectfully requests this Honorable Court to award:

a. compensatory damages;

b. reasonable costs and attorney's fees as provided for by statute;

    c.      damages for the pain, suffering, embarrassment, emotional distress and inconvenience caused to the Plaintiff; and,

    d.      such other relief as the court deems appropriate.

Respectfully submitted,

s/Susan N. Williams, Esq.
Susan N. Williams, Esq.
PA Id #40077
101 North Main Street, Suite 106
Greensburg PA 15601
(724) 838-8110
(724) 838-1600 (fax)