IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADAM HOWELL,<br>                  Plaintiff,<br><br>    v.<br><br>PENN TOWNSHIP, PENNSYLVANIA *a political subdivision*, CHIEF MICHAEL MASTROIANNA *an individual*, OFFICER LEWIS J. LOCK *an individual*, PENN TRAFFORD SCHOOL DISTRICT, KATHY KELLY-GARRIS *an individual*, SCOTT INGLESE *an individual*,<br>                  Defendants. | Civil Action No.  09-786 |

**MEMORANDUM OPINION AND ORDER**

<u>CONTI</u>, District Judge

I. **Introduction**

Pending before the court is the motion to dismiss (Docket No. 5) filed on August 17, 2009, by defendants Penn Trafford School District (the "school district" or "defendant"), Kathy Kelly-Garris ("Kelly-Garris"), and Scott Inglese ("Inglese"). Plaintiff Adam Howell ("Howell" or "plaintiff") filed a complaint (the "Complaint") (Docket No.1) against multiple parties. The fifth and final claims raised in the Complaint were brought pursuant to 42 U.S.C. § 1983 ("§ 1983") against the school district, Kelly-Garris and Inglese asserting infringement of plaintiff's liberty interest in his bodily integrity protected by the Fourteenth Amendment to the Constitution of the United States under the state-created danger doctrine. (Compl. 11.) The school district,

Kelly-Garris and Inglese sought to dismiss with prejudice all claims set forth against them in the Complaint.

On August 18, 2009, the parties stipulated for the dismissal without prejudice of Kelly-Garris and Inglese. (Docket No. 4.) On September 23, 2009, plaintiff filed a brief in opposition to the motion to dismiss. (Docket No. 17.) On January 20, 2010, during the oral hearing on the motion to dismiss, the court provided plaintiff the opportunity to file, within twenty days of the date of the hearing, a supplemental brief with respect to the issue of foreseeability, which is an element implicated in the state-created danger theory. Plaintiff did not file the supplemental brief. After considering the parties' submissions, and for the reasons set forth on the record and below, the court will grant the motion to dismiss without prejudice.

**II.     Background**

On September 19, 2007, plaintiff, a student at Penn Trafford High School (the "school"), gave the keys to his car to his girlfriend before school to hold for him until the end of the school day. (Comp. ¶ 14.) Later, at approximately 1:15 p.m., plaintiff's girlfriend, also a student at the school, was taken to the office of assistant principal Kelly-Garris, due to her having threatened to commit suicide. (Id. ¶¶ 15-16.) Kelly-Garris telephoned the girlfriend's mother to advise her about the suicide threat. (Id. ¶ 18.) Because the mother did not answer her cell phone, Kelly-Garris left a message with respect to the serious situation concerning her daughter, and notified the mother that she should immediately call Kelly-Garris. (Id. ¶ 19.) Principal Inglese contacted the school district's school psychologist who recommended that the girlfriend be taken by ambulance to the emergency room to be evaluated. (Id. ¶¶ 20-22.) When the girlfriend's mother

returned Kelly-Garris's telephone call, Kelly-Garris advised her that an ambulance was being called to take her daughter to the hospital. (Id. ¶ 23.) The mother refused to permit her daughter to be taken to the hospital and indicated that she would come to the school and take her daughter to her family physician. (Id. ¶ 24.)

After school, at approximately 2:45 p.m., plaintiff went to his truck to wait for his girlfriend. (Id. ¶ 25.) When plaintiff's girlfriend did not arrive at his car, he telephoned her cell phone. (Id. ¶ 27.) Kelly-Garris answered the girlfriend's cell phone and advised plaintiff that if he wanted his car keys, he would have to return to the school office, because his girlfriend had to remain at school. (Id. ¶¶ 28-29.) Kelly-Garris allegedly told plaintiff, "[y]ou need to get your keys and come calm her down." (Id. ¶ 29.) Kelly-Garris did not tell plaintiff at the time why his girlfriend had to remain at school. (Id.) When plaintiff returned to the school office, Kelly-Garris allegedly asked plaintiff to assist in calming down the girlfriend, who was "out of control" and insistent that she be permitted to leave. (Id. ¶ 32.)

Plaintiff was placed in a room with the girlfriend, but was not told why the girlfriend could not leave, or that his girlfriend threatened to commit suicide. (Id. ¶ 33.) Plaintiff's girlfriend refused to give him the keys to his car, and repeatedly demanded that he take her with him out of the school. (Id. ¶ 34.) Plaintiff asked to be allowed to take his girlfriend home. (Id. ¶ 35.) Kelly-Garris advised plaintiff that he could leave, but that the girlfriend must remain. (Id. ¶ 37.) When plaintiff's girlfriend was advised that she could not leave with plaintiff, she became combative. (Id. ¶ 38.)

Principal Inglese called the police and indicated that he needed an officer to deal with a suicidal student. (Id. ¶ 39.) Defendant Officer Lewis J. Lock ("Lock") responded to the call.

Allegedly, Lock had no idea about the nature of the situation in which he was being called to intervene.  (Id. ¶ 41.)

Plaintiff and his girlfriend left the school office and were confronted by Lock in a corridor.  (Id. ¶¶ 42-43.)  The girlfriend continued to be combative and Lock restrained her while attempting to handcuff her.  (Id. ¶¶ 44-46.)  Plaintiff told Lock to let the girlfriend get up.  (Id. ¶ 47.)  When Lock declined to do so, plaintiff grabbed Lock by the back of his shirt and attempted to pull Lock off of his girlfriend.  (Id. ¶¶ 48-49.)  Lock tased plaintiff in his chest without warning after which plaintiff fell to the ground.  (Id. ¶¶ 50-52.)  While plaintiff was lying on the ground Lock tased him again.  (Id. ¶52.)

### III.  Standard of Review

A motion to dismiss tests the legal sufficiency of the complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits.  Rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") motion to dismiss, a complaint must provide more than labels and conclusions.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Factual allegations must be enough to raise a right to relief above the speculative level, and sufficient to state a claim for relief that is plausible on

its face. Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Twombly, 550 U.S. at 556.

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.. . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 at 556) (internal citations omitted).

Two working principles underlie Twombly. Id. First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555.)  Second, to survive a motion to dismiss, a claim must state a plausible claim for relief. Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (citing 490 F.3d at 157-58). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]- that the pleader is entitled to relief.'" Id. (quoting Fed. Rule Civ. Proc. 8(a)(2)).  A court considering a motion to dismiss may begin by identifying allegations that are not entitled to the assumption of truth because they are mere conclusions.

> While legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume

their veracity and then determine whether they plausibly give rise to an
entitlement to relief.

Id.

IV.    Discussion

   A.    The Parties' Positions

      1.)    School District

The school district argues that the Complaint fails to state a claim against it because the allegations in the Complaint do not show there is a plausible claim based upon a state-created danger. In support, defendant cites Mark v. Borough of Hatboro, 51 F.3d 1137 (3d Cir. 1995) In Mark, the court of appeals considered [1] the viability of a state-created danger theory and instructed that to establish a state-created danger claim a plaintiff must show: 1) the harm ultimately caused was foreseeable and fairly direct; 2) the state acted with willful disregard for the safety of the plaintiff; 3) there existed some relationship between the state and the plaintiff; and 4) the state actor used its authority to create an opportunity that otherwise would not have existed for the third party's crime to occur. Id. at 1152.

The school district contends that plaintiff cannot meet any element of the state-created danger claim because: 1) plaintiff's harm was neither foreseeable nor fairly direct; 2) giving

---

[1] The court of appeals, however, did not have to decide whether the state-created danger theory was valid. "[W]e have yet to decide definitely whether the state-created danger theory is a viable mechanism for finding a constitutional injury . . . only going so far as to acknowledge that other courts have recognized the theory.. . . [W]e have found language . . . supporting and opposing the existence of a state-created danger theory.. . . [b]ut we have not reached that day, because even assuming that a plaintiff can state a constitutional violation based on the state-created danger theory, there can be no liability in this case." Mark, 51 F.3d at 1152.

permission to plaintiff to interact with his girlfriend and giving alleged insufficient information about plaintiff's girlfriend to the police that she was a "suicidal student" do not rise to the level of willful disregard; 3) plaintiff did not have a special relationship with the school district as school was over for the day and plaintiff admits that he was free to leave the premises; and 4) no third party crime was committed. Defendant notes that the only crime committed was by plaintiff who was charged and convicted of a misdemeanor two for obstruction of justice, and given probation as a result of the incident.

  The school district contends that Howell's action against it is at most a tort claim of negligence for allegedly not telling the police more information and allegedly being negligent in permitting plaintiff to interact with his girlfriend. Defendant argues plaintiff cannot circumvent the state immunity law shielding school districts of negligent tort claims under the Pennsylvania Political Subdivision Tort Claims Act,[2] 42 PA. CONST. STAT. ANN. §§ 8541-64, by calling the

---

[2]
>   Subchapter C of Chapter 85 of the Judicial Code, 42 Pa.C.S. §§ 8541-8564 (the PSTCA) . . . The PSTCA grants "local agencies" and their employees immunity. Chapter 85 of the Judicial Code, 42 Pa.C.S. § 8501-8564, addresses "Matters Affecting Government Units." Subchapter C of Chapter 85 of the Judicial Code, 42 Pa.C.S. § 8541-8564, which addresses "Actions Against Local Parties," is commonly referred to by the unofficial name "Political Subdivision Tort Claims Act." We note that the name "Political Subdivision Tort Claims Act" was formerly the official title of the Act of November 26, 1978, P.L. 1399, *as amended,* formerly 53 P.S. § 5311.1101-5311.803, repealed by the Act of October 5, 1980, P.L. 693. If the cause of action arose after 1980, references to the Political Subdivision Tort Claims Act most likely refer to the Judicial Code and not to the repealed act. When used in this opinion, the Political Subdivision Tort Claims Act shall refer to the Judicial Code.

Flood v. Silfies, 933 A.2d 1072, 1073 (Pa. Commw. Ct. 2007).

claim a violation of § 1983.

        **2.)    Howell**

Howell claims that he pled with specificity the elements of a constitutional claim based upon state-created danger.  Plaintiff contends that he alleged two separate instances in which the school district used its authority to create a dangerous situation or to make him more vulnerable to danger than had the school district not intervened.  The first instance plaintiff alleged was that he was allowed to interact with his admittedly suicidal girlfriend.  In support, plaintiff points to paragraphs 87-90 of the Complaint which  provide:

> 87. At all times material hereto, the Defendants knew, or should have known that summoning police with no more information than "a suicidal student" would not provide police with information sufficient to assess and appropriately respond to the situation.
>
> 88. At all times material hereto, the Defendants, with willful disregard, reckless indifference, or deliberate indifference to [Howell's] safety, created a dangerous environment by summoning police with no more information than "a suicidal student," thereby depriving police of information sufficient to assess and appropriately respond to the situation.
>
> 89. At all times material hereto, there existed a particular danger to [Howell] as a result of Defendants' actions in summoning police with no more information than "a suicidal student," thereby depriving police of information sufficient to assess and appropriately respond to the situation.
>
> 90. At all times material hereto, Defendants used the color of their authority to summon police with no more information than "a suicidal student," thereby depriving police of information sufficient to assess and appropriately respond to the situation.

(Compl. ¶¶ 87-90.)

The second instance Howell alleged was that when the police were contacted by defendant, the police were not provided with information sufficient to assess what action was

appropriate. Howell points to paragraphs 91-94 of the Complaint, which provide:

> 91. At all times material hereto, the Defendants knew, or should have known, that summoning police with no more information than "a suicidal student" would not provide police with information sufficient to assess and appropriately respond to the situation.
>
> 92. At all times material hereto, the Defendants, with willful disregard, reckless indifference, or deliberate indifference to [Howell's] safety, created a dangerous environment by summoning police with no more information than "a suicidal student," thereby depriving police of information sufficient to assess and appropriately respond to the situation.
>
> 93. At all times material hereto, there existed a particular danger to [Howell] as a result of Defendants' actions in summoning police with no more information than "a suicidal student," thereby depriving police of information sufficient to assess and appropriately respond to the situation.
>
> 94. At all times material hereto, Defendants used the color of their authority to summon police with no more information than "a suicidal student," thereby depriving police of information sufficient to assess and appropriately respond to the situation.

(Id. ¶¶ 91-94.) Howell claims that these alleged facts allow the court to draw the reasonable inference that he has a plausible constitutional claim against the school district under the state-created danger doctrine.

### B.    Analysis

#### 1.)    § 1983 - General Framework

Plaintiff's claim against the school district is asserted pursuant to § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

> thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983. This statute does not create substantive rights. Maher v. Gagne, 448 U.S. 122, 129 n.11 (1980). A plaintiff cannot prevail in an action brought under § 1983 without establishing an underlying violation of a federally protected right. Collins v. Harker Heights, 503 U.S. 115, 119-20 (1992). "Section 1983 itself 'contains no state-of-mind requirement independent of that necessary to state a violation' of the underlying federal right." Bd. of County Comm'rs v. Brown, 520 U.S. 397, 405 (1997) (quoting Daniels v. Williams, 474 U.S. 327, 330 (1986)). "Thus in order to state a cause of action under Section 1983, two allegations are required. 'First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.'" Jarrett v. Twp. of Bensalem 312 F. App'x 505, 506-07 (3d Cir. 2009) (quoting Gomez v. Toledo, 446 U.S. 635, 640 (1980).

        2.)    **State-Created Danger - General**

Here, the court's central focus is whether the factual allegations in the Complaint are sufficient to show the plausibility of the first element of a § 1983 claim, i.e., that there is a violation of federal law. Howell claims his constitutional rights were violated under the state-created danger theory. In Kneipp v. Tedder, 95 F.3d 1199 (3d Cir. 1996), the Court of Appeals for the Third Circuit adopted the "state-created danger" theory as a viable mechanism for

establishing a constitutional claim under § 1983. The court of appeals stated:

> Under the particular circumstances of this case, we hold that the state-created danger theory is a viable mechanism for establishing a constitutional claim under 42 U.S.C. § 1983.

Kneipp v. Tedder, 95 F.3d at 1211. In Kneipp, the court of appeals applied the four-part test it had previously articulated in Mark v. Borough of Hatboro, 51 F.3d 1137, 1152 (3d Cir. 1995). To state a state-created danger claim such that a state actor could be held constitutionally liable for injuries to a plaintiff, the plaintiff must show that: 1) the harm ultimately caused was forseeable and fairly direct; 2) the state acted in a willful disregard for the safety of the plaintiff; 3) there existed some relationship between the state and the plaintiff; and 4) the state actor used its authority to create an opportunity that otherwise would not have existed for the third party's crime to occur. Liability attaches if the four prongs of the test are satisfied. Kneipp, 95 F.3d at 1208.

The situation in Kneipp concerned a visibly inebriated and incapacitated woman who was walking along a road at night with her husband in cold weather. The police stopped the husband and wife and took the husband into custody. The police left the inebriated woman alone on the road. Eventually, the woman was found in an embankment next to the parking lot near her home. It was clear that she had fallen and was hospitalized due to exposure to the cold. She suffered brain damage and impairment of many bodily functions. The court of appeals concluded that "a reasonable jury could find that the harm likely to befall [Kneipp] if separated from [her husband] while in a highly intoxicated state in cold weather was indeed foreseeable" and could have led directly to her injuries. Id.

The court of appeals in Kneipp discussed D.R. by L.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364 (3d Cir. 1992) (en banc), in which the state-created danger theory was at issue.  In D.R, two female students were allegedly physically, verbally and sexually molested by male students in a unisex bathroom and a dark room, which were part of a graphics art class room.  Kneipp, 95 F.3d at 1206.  The plaintiffs in D.R. argued that because the school district facilitated the creation of the danger which had placed the plaintiffs into a situation that resulted in a violation of the plaintiffs' constitutional rights, the school district was obligated to protect the plaintiffs from violations by other students who were also under the defendants' control.  Id. at 1206-07.  The court of appeals concluded that the facts presented in D.R. did not show that the defendants in that case created the students' danger, increased their risk of harm or made them more vulnerable to the assaults because the harm to the students resulted solely from the acts of private individuals, and not from the type of intermingling between state conduct and private violence that imposed liability where the state had affirmatively acted to create the danger.  Id.

Here, the school district argues that, at a minimum, there are insufficient factual allegations in the Complaint to support a plausible claim § 1983 under the state-created danger theory.  One prong of the claim defendant asserts cannot be met is foreseeability.

      3.)   **Forseeability**

The threshhold issue before the court is whether there are sufficient factual allegations in the Complaint to give rise to a plausible inference that the harm ultimately caused to plaintiff was forseeable and fairly direct.  This kind of issue was raised in Morse v. Lower Merion Sch. Dist., 132 F.3d 902 (3d Cir.1997).  In Morse, a daycare teacher while teaching in a classroom was

killed by a local resident intruder who had a history of mental illness. Id. at 904. The intruder came into the school building by going through an unlocked door, which allegedly the defendant school district knew was unlocked for the convenience of contractors who were presently working in the building. Id. The court of appeals, in affirming the grant of a motion to dismiss under Rule 12(b) of the Federal Rules, concluded the harm caused by the deranged intruder coming into the building and killing the daycare teacher was not foreseeable or a direct result of the defendant allowing construction workers to use the unlocked back door. Id. at 908-10. The court of appeals held that the defendants "could not have foreseen that allowing construction workers to use an unlocked back entrance for access to the school building would result in the murderous act of a mentally unstable third party, and that the tragic harm which ultimately befell [plaintiff] was too attenuated from defendants' actions to support liability." Id. at 908. The court of appeals noted that: 1) the complaint did not allege that the defendants were aware of the intruder's violent propensities; 2) there was no allegation that the defendants were aware of anyone posing a credible threat of violence to persons inside the school building; and 3) the intruder's attack was not a "fairly direct" result of the defendants' actions. Id. at 908-09. In other words, the plaintiff needed to show that the school knew of the threat posed by the third party.

The court of appeals in Morse distinguished decisions where courts held that the danger was foreseeable and identified situations in which the defendant knew about some dangerous propensity or circumstances involving a danger to an individual that could easily be foreseen.

> Similarly, the decisions to hold the state actors liable under the state-created danger theory in *Wood v. Ostrander,* 879 F.2d 583 (9th Cir.1989), and *Cornelius v. Town of Highland Lake,* 880 F.2d 348 (11th Cir.1989), were premised on facts in which the harm visited on the plaintiffs was more foreseeable than the random attack perpetrated by Stovall here. The plaintiff in *Wood* was the

13

female passenger of a drunk driver who was pulled over late one evening by police. The driver was arrested and the car impounded, leaving Ms. Wood stranded on the road in a notoriously high crime area. After beginning the five mile walk to her home, Ms. Wood accepted a ride from an unknown man who subsequently took her to a secluded area and raped her. Addressing the issue of foreseeable harm, the court noted that the "inherent danger facing a woman left alone at night in an unsafe area is a matter of common sense." 879 F.2d at 590 (citations omitted).

In *Cornelius,* the United States Court of Appeals for the Eleventh Circuit found that prison and town officials could be liable to the plaintiff, who was abducted and held hostage for several days by prison inmates assigned to a community work program in the town hall where she was employed. Reversing the lower court's grant of summary judgment, the court of appeals found that genuine issues of fact existed which related to the "special danger" created by the work squad's presence in the town hall. The court noted that the defendants in *Cornelius* knew of the dangerous propensities of the prison inmates assigned to the work program, as well as the lack of supervision over those inmates, and thus "were aware of the danger present from the community work squad inmates." 880 F.2d at 358. The ultimate manifestation of that danger was therefore foreseeable. . . .

In this respect the case before us is more analogous to the facts in *Gregory v. City of Rogers,* 974 F.2d 1006 (8th Cir.1992), *cert. denied,* 507 U.S. 913, 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993). In *Gregory,* three friends were returning home from an evening of drinking, with one of them, Stanley Turner, serving as designated driver. The police stopped their vehicle for running a red light, and in the process of making a routine warrant check, discovered an outstanding warrant for Turner's arrest. At his request, the police allowed Turner to drive to the station in order to clear up the matter. After arriving at the station, Turner parked and went inside, leaving behind his two intoxicated passengers, and leaving the keys in the ignition. After waiting for thirty minutes, the passengers drove off, and were involved in a single car accident which killed the driver and injured the other passenger. Plaintiffs -the surviving passenger and the wife, son and estate of the decedent–brought a claim against the police under the state-created danger theory. The district court granted the defendants' motion for summary judgment, and the United States Court of Appeals for the Eighth Circuit, sitting en banc, affirmed. The court concluded that even if the police were aware that both passengers were intoxicated, a

14

> reasonable trier of fact could not find that the police placed them in a dangerous situation by merely leaving them alone in the car. *Id.* at 1011 (contrasting the facts there with the facts in *Wood* ). "Simply put, it was not unsafe for the intoxicated [passengers] to wait for Turner inside the car where it was parked until Turner inexplicably left the keys with them." *Id.* at 1012. The court ruled that because Turner's unforeseeable act was the catalyst for the injury which plaintiffs suffered, the police could not be held liable. *Id.*

Morse, 132 F.3d at 910.

In the instant case, the Complaint describes the harm suffered by Howell, which the court discerns as being caused by the tasering that occurred. Viewing the allegations in the Complaint in the light most favorable to Howell and taking all facts that he alleges as true, the court cannot find a plausible § 1983 claim implicating a state-created danger. The factual allegations are insufficient for the court to infer that it is plausible for plaintiff to establish the first element under the state-created danger theory, i.e., the harm ultimately caused was foreseeable and fairly direct. There were no factual allegations in the Complaint concerning whether the school district knew or should have known the police or police officer had a propensity to use excessive force or that there was a threat of tasering. Plaintiff does not allege that any school official tasered him; that Lock was an employee or agent of the school district; or that any third party crime was committed beyond Howell's own act.

Plaintiff in the Complaint states in a conclusory fashion that defendant knew, or should have known, that summoning the police with insufficient information would put plaintiff in danger; that defendant acted with willful disregard, reckless indifference or deliberate indifference; and that there existed a particular danger to plaintiff as a result of defendant summoning the police. These conclusory statements do not allow the court to infer that

plaintiff's injury was foreseeable and fairly direct to defendants.  Under the facts pled, the court cannot infer that the school district could foresee that Lock would taser plaintiff.  Therefore, the court cannot conclude that the Complaint is sufficient to permit an inference the school district affirmatively acted to create the danger by calling the police.  Under those circumstances, the motion to dismiss must be granted.

Howell's claim in the Complaint against the school district, at most, states a tort claim of negligence for allegedly not telling the police officer more information and allegedly permitting Howell to interact with his girlfriend under the circumstances.  In Pennsylvania, however, governmental agencies are immune from claims of tort under the Pennsylvania Political Subdivision Tort Claims Act, 42 PA. CONST. ANN. § 8541, which provides in relevant part:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 PA. CONST. ANN. § 8541; see  Snead v. Soc'y for Prevention of Cruelty to Animals of Pa., 929 A.2d 1169, 1178 (Pa. Super. Ct. 2007); see also Gremo v. Karlin, 363 F. Supp.2d 771 (E.D. Pa. 2005) (Pennsylvania Political Subdivision Tort Claims Act barred state-law negligence claims asserted against school and police officials by high school student who was severely injured when he was attacked and beaten by group of students, but did not preclude claims alleging willful misconduct by officials).

**V.      Conclusion**

When viewed in the light most favorable to Howell, the factual allegations in the Complaint are insufficient to state a plausible § 1983 claim for a violation of plaintiff's constitutional rights by the school district. Accordingly, for the reasons set forth above, the court will enter the following order.

**VI.     Order**

**IT IS HEREBY ORDERED** that the Motion to Dismiss (Docket No. 5) filed by defendant Penn Trafford School District is **GRANTED**. Plaintiff's § 1983 claim against Penn Trafford School District, asserting violations of the Fourteenth Amendment to the Constitution of the United States under a theory of state-created danger is **DISMISSED WITHOUT PREJUDICE**.

Date: March 15, 2010                                By the court,
                                                    /s/ JOY FLOWERS CONTI
                                                    Joy Flowers Conti
                                                    United States District Judge